46 A.3d 1162

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Saladin Eric SHAKIR.**

**Misc. Docket AG No. 8, Sept. Term, 2009.**

Court of Appeals of Maryland.

June 25, 2012.

Dolores O. Ridgell, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel of the Attorney Grievance Commission of Maryland), for petitioner.

No argument on behalf of the respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS and BARBERA, JJ.

PER CURIAM OPINION.

On April 21, 2009, Petitioner, the Attorney Grievance Commission, acting through Bar Counsel, filed a "Petition for Disciplinary or Remedial Action" against Saladin Eric Shakir. Petitioner alleged that Shakir, while representing Leonel Vasquez in two separate matters, violated the following Maryland Lawyers' Rules of Professional Conduct (MLRPC): 1.1 (Competence),[1] 1.3 (Diligence),[2] 1.5(a) (Fees),[3] 1.15(c) (Safekeeping

---

\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

**1.** Maryland Lawyer's Rule of Professional Conduct (MLRPC) 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

**2.** MLRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Property),[4] 1.16(d) (Declining or Terminating Representation),[5] and 8.4(d) (Misconduct).[6] Shakir accepted advance fee payments in both engagements by Vasquez, but failed subsequently to deposit them into an attorney trust account or to perform the agreed-upon legal services.

___

**3.** MLRPC 1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**4.** MLRPC 1.15(c) provides:

Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

**5.** MLRPC 1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**6.** MLRPC 8.4(d) provides, "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

In accordance with Maryland Rule 16–752(a),[7] the Court referred the matter to the Honorable Paul G. Goetzke of the Circuit for Anne Arundel County to conduct an evidentiary hearing in order to render findings of fact and propose conclusions of law, pursuant to Maryland Rule 16–757.[8] A "Writ of Summons" issued for Respondent on May 1, 2009. On July 21, 2009, reissuance of the summons was necessary because Petitioner failed to obtain personal service on Shakir. Petitioner sent the "Writ of Summons," "Petition for Disciplinary or Remedial Action," and the "Transmittal Order," by certified and ordinary mail, on August 12, 2009, to Respondent's last two known addresses. On August 31, 2009, both mailings were returned by the U.S. Post Office marked as undeliverable. Consequently, on October 9, 2009, Petitioner filed a "Motion for Default," mailing a copy to Respondent at the two previously used addresses and an additional address. Judge Goetzke ordered that Petitioner attempt service on Respondent at the latter address. Petitioner obtained a reissued summons and, on November 19, 2009, served Shakir personally at the offices of the Attorney Grievance Commission. Shakir failed, timely or otherwise, to file an answer or respond. Petitioner filed an "Amended Motion for Order of Default," which Judge Goetzke granted on February 3, 2010.

---

7. MLRPC 16–752(a) provides:

Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for completion of discovery, filing of motions, and hearing.

8. MLRPC 16–757(c) provides:

The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

Although notice of the grant of the default order was mailed to Shakir at the address where, at the time of the earlier service, he represented he resided, he failed to move to challenge or vacate the default order. Judge Goetzke held the evidentiary hearing on March 19, 2010. Shakir neither attended nor participated in the hearing. Thus, the hearing proceeded through ex parte proof offered by Bar Counsel.

### I. Findings of Fact and Conclusions of Law

Judge Goetzke made the following findings of fact, to a clear and convincing standard, regarding Shakir's representation of Vasquez. During the relevant period of time, Shakir maintained a law office in Prince George's County, Maryland.[9]

In February of 2007, Vasquez paid Shakir $2,500 to file an Application for Asylum in the United States, pursuant to the federal Nicaraguan Adjustment and Central American Relief Act. Shakir neither deposited the money into an attorney trust account nor filed ultimately the Application for Asylum. Shakir, when the representation was terminated, failed to return the unearned portion of the fee to Vasquez.

On or about May 9, 2007, Vasquez paid Shakir $800 to represent him regarding DUI/DWI charges in the District Court for Maryland, sitting in Prince George's County, and later in the Circuit Court for Prince George's County. On or about March 31, 2008, Shakir failed to appear at the relevant hearing in the Circuit Court. Shakir failed to notify his client that he would not attend this hearing, but did inform the court. The court rescheduled the hearing for July 28, 2008. Shakir failed again to appear. This time, however, he notified neither his client nor the court. The court attempted unsuccessfully to contact Shakir on July 28; however, he had changed his phone number without informing the court. As with the prior representation, Shakir failed to deposit the $800 fee into an attorney trust account and did not refund the unearned portion to his client upon termination of this repre-

---

9. Shakir was admitted to the Maryland Bar on February 1, 2001.

sentation. Judge Goetzke concluded that Shakir violated MLRPC 1.1, 1.3, 1.5(c), 1.15(c), 1.16(d), and 8.4(d).

During Shakir's representation of Vasquez, the Attorney Grievance Commission received five additional complaints against Shakir, none of which were related to Shakir's representation of Vasquez. The complaints, which spanned allegations of incidents from 2001 to 2007, alleged that Shakir violated MLRPC 1.3, 1.4, 1.5(a), 1.15, 1.16, and 8.1(b). Shakir admitted to these violations and consented to the imposition of a sanction of indefinite suspension. We suspended indefinitely Shakir on August 8, 2008.

## II. Standard of Review

"This Court has complete and original jurisdiction over all attorney discipline proceedings in Maryland." *Att'y Griev. Comm'n v. Nwadike*, 416 Md. 180, 192, 6 A.3d 287, 294 (2010). Although the Court conducts an independent review of the record, we uphold the hearing judge's findings of fact, unless shown to be clearly erroneous. *Att'y Griev. Comm'n v. Uguwuonye*, 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008). If neither party files exceptions to the hearing judge's findings of fact, "the Court may treat them as established for the purpose of determining appropriate sanctions." Maryland Rule 16–759(b)(2)(A). The Court, however, reviews the hearing judge's conclusions of law without deference. *Att'y Griev. Comm'n v. Lara*, 418 Md. 355, 364, 14 A.3d 650, 656 (2011); Maryland Rule 16–759(b)(1).

## III. Discussion

Petitioner accepted Judge Goetzke's findings of fact and conclusions of law without exception. Shakir did not file exceptions or appear at oral argument. In accordance with Maryland Rule 16–759(b)(2)(A), we accept Judge Goetzke's findings of fact for the purpose of determining the appropriate sanction. Therefore, we shall proceed to review Judge Goetzke's conclusions of law, under the "no deference" standard.

■ MLRPC 1.1 requires an attorney to provide compe-
tent representation to his/her client by applying the appropri-
ate knowledge, skill, thoroughness, and preparation to the
client's issues. A failure to make the proper and required
filings in a client matter demonstrates a lack of the appropri-
ate preparation and thoroughness necessary to provide compe-
tent representation. *Att'y Griev. Comm'n v. Guida*, 391 Md.
33, 54, 891 A.2d 1085, 1097 (2006) (concluding that an attor-
ney's failure to file the necessary documents in his client's
adoption matter demonstrated a lack of preparation and thor-
oughness, in violation of MLRPC 1.1). Additionally, a failure
to appear at a client's hearing is a complete failure of repre-
sentation. *Att'y Griev. Comm'n v. Harris*, 366 Md. 376, 403,
784 A.2d 516, 531 (2001). Here, Shakir failed to file an
"Application for Asylum" on behalf of Vasquez and failed to
appear at Vasquez's DUI/DWI hearings. Accordingly, Shakir
failed to represent competently Vasquez and thereby violated
MLRPC 1.1.

■ Similarly, MLRPC 1.3 requires an attorney to repre-
sent his/her client with diligence and promptness. An attor-
ney violates this rule when he/she takes no action whatsoever
in representing his/her client. *Att'y Griev. Comm'n v. De La
Paz*, 418 Md. 534, 554, 16 A.3d 181, 193 (2011). Shakir's
failure to pursue Vasquez's asylum application and repeated
failure to appear at his client's DUI/DWI hearings violated
MLRPC 1.3.

■ MLRPC 1.5(a) prohibits an attorney from charging
unreasonable fees. Although a calculated fee, demanded in
anticipation of performing specific legal representation, may
be reasonable at the time of receipt, it can become unreason-
able if an attorney fails to perform the agreed-upon services.
*Guida*, 418 Md. at 552–53, 16 A.3d at 196. Shakir failed to
perform the agreed-upon services on Vasquez's behalf; thus,
the fees were unreasonable and in violation of MLRPC 1.5(a).

MLRPC 1.15(c) requires plainly that an attorney deposit
fees, paid in advance, into an attorney trust account, unless
the client consents knowingly to an alternative arrangement.

Vasquez paid Shakir $2,500 for pursuing an asylum application and $800 to represent him regarding DUI/DWI charges. Shakir failed to deposit the unearned fees into an attorney trust account. There is no evidence to suggest that Vasquez consented to an alternative arrangement. Although the record does not indicate that Shakir deposited the advance fees into a personal or operations account, his failure to deposit the fees into an attorney trust account, without Vasquez's consent not to do so, violated MLRPC 1.15(c). *Att'y Griev. Comm'n v. Lawson*, 401 Md. 536, 568, 933 A.2d 842, 861 (2007).

MLRPC 1.16(d) requires an attorney, at the termination of representation, to refund advanced fees that were not earned. Shakir did not earn either the $2,500 or the $800 advanced fees. Pursuant to MLRPC 1.16(d), he was required to refund them to Vasquez. Shakir's failure to do so violated MLRPC 1.16(d). *Att'y Griev. Comm'n v. Tinsky*, 377 Md. 646, 652, 835 A.2d 542, 545 (2003).

MLRPC 8.4(d) states that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." An attorney's failure to appear at scheduled hearings on behalf of his/her client is a violation of MLRPC 8.4(d). *De La Paz*, 418 Md. at 556–57, 16 A.3d at 194. In *Tinsky*, we held that the attorney violated MLRPC 8.4(d) because he accepted an advance fee of $925, failed to make the proper filings, and failed to refund the unearned portion of the fee. 377 Md. at 651–54, 835 A.2d at 545–46. Here, Shakir behaved in a similarly egregious fashion by failing to pursue Vasquez's immigration application and DUI/DWI cases, and failing to refund the unearned advance fees collected. Shakir violated MLRPC 8.4(d).

## IV. Sanction

Having determined that Shakir violated all of the MLRPC provisions alleged by Petitioner, we determine finally the appropriate sanction. The goal of sanctions is not to punish the attorney, but to "protect the public and the public's confidence in the legal profession." *Att'y Griev. Comm'n v.*

*Edib,* 415 Md. 696, 718, 4 A.3d 957, 971 (2010). This goal is achieved when the sanction corresponds with the severity of the violations and the intent with which they were committed. *Att'y Griev. Comm'n v. Bleecker,* 414 Md. 147, 176, 994 A.2d 928, 945 (2010). The aim of sanctions also is to demonstrate to the Bar what the proper expectations of the Court are for the practice of law and what conduct will not be tolerated. *Nwad-ike,* 416 Md. at 201, 6 A.3d at 299. Petitioner recommends that we disbar Shakir for his violations, based on his disciplinary history and *Tinsky,* 377 Md. at 653–56, 835 A.2d at 546–47.

In similar cases, we disbarred attorneys who neglected serially their clients and failed to refund unearned fees. In *Lara,* 418 Md. at 365, 14 A.3d at 656, Lara accepted advance payments of $500 and $600 from two separate clients. Lara failed to deposit the fees in an attorney trust account, did not complete the agreed-upon services, and failed to refund the unearned fees to his clients. We concluded that Lara violated MLRPC 1.3, 1.4, 1.15, 1.16, and 8.4. We disbarred Lara, who, unlike Shakir, did not have a disciplinary history. *Lara,* 418 Md. at 364, 14 A.3d at 656; *see also Tinsky,* 377 Md. at 653, 835 A.2d at 546.

Additionally, in *Attorney Grievance Commission v. Faber,* 373 Md. 173, 817 A.2d 205 (2003), we disbarred Faber for violating MLRPC 1.1, 1.2, 1.3, 1.4, and 1.16. Faber failed to complete the required filings in two separate bankruptcy cases, despite accepting payment to do so. Even without findings of violation of MLRPC 1.5(a), 1.15(c), or 8.4(d), unlike in the present case, we disbarred Faber because repeated neglect of one's clients is sufficient justification for disbarment. *Faber,* 373 Md. at 181, 817 A.2d at 209.

 Shakir's misconduct is aggravated by his disciplinary record. *Att'y Griev. Comm'n v. Harris,* 366 Md. at 406, 784 A.2d at 533 (noting that prior disciplinary history is an aggravating factor in an attorney misconduct matter).[10] This Court

---

10. Shakir's misconduct is aggravated also by his lack of cooperation with the disciplinary proceedings here. *Att'y Griev. Comm'n v. Garfield,* 369 Md. 85, 105, 797 A.2d 757, 768 (2002).

suspended indefinitely Shakir on August 8, 2008, for violating MLRPC 1.3, 1.4, 1.5(a), 1.15(c), 1.16(d), and 8.1(b) during his representation of five clients. A history of MLRPC violations may provide justification for disbarment in and of itself, but, when the prior violations are based on analogous grounds as a pending case, disbarment is the most appropriate sanction. *Faber*, 373 Md. at 181, 817 A.2d at 209 (justifying disbarment, in part, because of prior pattern of neglect); *Maryland State Bar Ass'n, Inc. v. Phoebus*, 276 Md. 353, 364, 347 A.2d 556, 562 (1975) (concluding that habitual violations warrant more severe discipline than if it were a first offense). Shakir's previous violations correspond to those in the present case. In both cases, Shakir violated MLRPC 1.3, 1.5(a), 1.15, and 1.16. Further, the circumstances of the violations are similar. Of the five other complaints, four involved Shakir's failure to file briefs in support of immigration matters. Also, like Shakir's present misconduct, a previous complaint involved failing to deposit advance fees into a trust account and returning unearned fees. The record here reveals no mitigating factors.

Ultimately, Shakir neglected Vasquez's legal needs, failed to deposit properly advance fees in an escrow account, and failed to refund unearned fees, all amounting to conduct that is prejudicial to the administration of justice. The severity and pattern of Shakir's violations, coupled with his indefinite suspension for similar misconduct, warrants disbarment for the protection of the public.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SALADIN ERIC SHAKIR.**